**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 19 2012, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HAROLD E. AMSTUTZ**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID E. COREY**
**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) | |
| | ) | |
| Al. S. & A.S. (Minor Children) | ) | |
| | ) | |
| and | ) | |
| | ) | |
| C.S. (Father) | ) | No. 79A02-1112-JT-1158 |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Loretta H. Rush, Judge
The Honorable Faith A. Graham, Magistrate
Cause No. 79D03-1108-JT-109;79D03-1108-JT-111

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-respondent C.S. (Father) appeals the juvenile court's termination of his parental rights as to his minor daughters, A.S. and Al. S., upon the petition of appellee-petitioner Tippecanoe County Department of Child Services (DCS). Specifically, Father argues that the termination order must be set aside because the juvenile court erred in determining that there is a reasonable probability that the conditions that led to the children's removal would not be remedied, that the DCS failed to present sufficient evidence that the continuation of the parent-child relationship posed a threat to the children's well-being, and that the juvenile court erred in determining that the children's best interests would be served by the termination of parental rights.

Concluding that the juvenile court did not err in terminating Father's parental rights as to both children, we affirm.

## FACTS

S.S. (Mother) and Father are the parents of Al. S., born on April 27, 2009, and A.S., born on November 30, 2010. Mother is not a party to this appeal. Mother and Father had married in June 2009, and the marriage was fraught with instances of domestic violence.[1]

---

[1] Mother and Father divorced in January 2011.

2

On June 22, 2010, the DCS received a report that Al. S. was being neglected. Specifically, it was alleged that Al. S. had an ongoing diaper rash, a yeast infection, dermatitis, a urinary tract infection, and low weight. DCS representatives also found dirty and molded dishes on the counters and floors of the residence. At that time, Father was already involved with the DCS through his other child, K.V., who had been previously adjudicated a Child in Need of Services (CHINS).[2]

DCS family case manager Maria Hancock initiated the assessment and noted that Mother had been arrested for domestic battery and Father was treated at a local hospital for a contusion. It was also observed that Al. S. did not have proper bedding. Subsequent investigation confirmed the reports and revealed that Al. S. weighed only sixteen pounds at fourteen months of age.

The evidence showed that both Mother and Father failed to follow a safety plan with regard to a previous domestic battery incident. Al. S. was placed in protective custody in accordance with a CHINS Detention Hearing order that was issued on June 28, 2010. Al. S. was found to be a CHINS and a dispositional order was issued on July 23, 2010.

A.S. remained in Mother's care. Shortly after A.S.'s birth, Al. S. was placed in Mother's care on a trial home visit commencing December 15, 2010. Within sixty days of the trial home visit, Mother was arrested for shoplifting at the mall with the children present. Mother had failed to comply with a safety plan regarding access to the children,

---

[2] Father eventually voluntarily relinquished his parental rights as to K.V. Tr. p. 58, 59.

and she had allowed contact between the children and unapproved caregivers. Mother's mental health had deteriorated and she was briefly hospitalized for inpatient mental health treatment after her release from jail.

Both children were placed in protective custody pursuant to an order that was issued on January 24, 2011. A.S. was found to be a CHINS, and another dispositional order was issued on February 14, 2011. A CASA was appointed to represent the interests of both children. Both A.S. and Al. S. have remained out of the parents' care continuously since that date.

The DCS offered Mother and Father various services including parenting classes, and couples' counseling. Father was also ordered to undergo anger management services and substance abuse education. However, Father stopped attending various appointments and participating in services. Father offered various excuses for not attending the appointments, including illness, oversleeping, failing to write down the appointments, and forgetting. Father was eventually discharged from one of the facilities because he made threats during the therapy sessions and did not pay his fees.

On August 16, 2011, the DCS filed petitions to terminate Father and Mother's parental rights as to both children. At a hearing that commenced on the petitions on October 25, 2011, it was determined that neither parent had demonstrated an investment in unification with the children. The evidence showed that the circumstances of neither of the parents had improved, and they were in no better position to care for their children.

4

Mother resided in a number of places during the pendency of the proceedings until she was able to locate a subsidized residence in February 2011. Although Mother recently took a job at Wal-mart, she has no driver's license and must rely on rides or bus transportation.

It was also determined that Mother was unable or unwilling to address her mental health needs. She had been diagnosed with bipolar disorder and prescribed medications. She failed to follow through with the therapy that was recommended, and she has missed psychiatric appointments for medication management.

Mother also has difficulties feeding the children and meeting their nutritional needs. She struggles with decisions as to whether the children require a bottle or baby food, despite intensive parent training in this area. Mother still needs prompting to feed A.S. on a regular basis.

The evidence also established Father's history of instability. Although Father maintained an apartment for approximately one year, he is unemployed and has no income for basic supplies for the children. Father has consistently missed visits with the children and he has failed to attend various services that were recommended by the DCS to improve his stability and parenting skills. In fact, Father was discharged from therapy as a result of some threatening remarks and lack of attendance.

The CASA, Rebecca Barnes, testified that termination of parental rights was in the children's best interest. Barnes specifically noted the parents' inability or unwillingness to follow through with the DCS's recommended services to improve their circumstances

5

and parenting.  Barnes also observed that the children are comfortable in foster care and have no special needs.

On December 1, 2011, the juvenile court entered an order terminating the parental rights of Mother and Father as to both children.  The conclusions of law provided in part that

1.  There is a reasonable probability that the conditions that resulted in the removal of the children from the parents' care or the reasons for the continued placement outside the home will not be remedied.  Neither parent has yet to demonstrate the ability or willingness to make lasting changes from past behaviors.  There is no reasonable probability that either parent will be able to maintain stability in order to care and provide adequately for the children.

2.  Continuation of the parent-child relationships poses a threat to the well-being of the children. The children need stability in life. The children need parents with whom the children can form a permanent and lasting bond to provide for the children's emotional and psychological as well as physical well-being.  The children's well-being would be threatened by keeping the children in parent-child relationships with either parent whose own choices and actions have made them unable to meet the needs of the children.

3.  DCS has a satisfactory plan of adoption for the care and treatment of the children following termination of parental rights.  The children can be adopted and there is reason to believe an appropriate permanent home has or can be found for the children as a sibling group.

4.  For the foregoing reasons, it is in the best interests of Al. S. and A.S. that the parental rights of [Mother and Father] be terminated.

Father now appeals.

6

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. In re R.S., 774 N.E.2d 927, 930 (Ind. Ct. App. 2002). We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id. at 929-30. This court will not set aside the juvenile court's judgment terminating a parent-child relationship unless the judgment is clearly erroneous. Id.

The purpose of terminating parental rights is not to punish parents but to protect their children. In re Termination of the Parent-Child Relationship of D.D., 804 N.E.2d 258, 264 (Ind. Ct. App. 2004). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parties are unable or unwilling to meet their responsibility as parents. Id. The juvenile court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding the termination. In re R.S., 774 N.E.2d at 930. Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. Id. The juvenile court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. Id.

Indiana Code section 31-35-2-4(b)(2) sets out the following elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

> (B) there is a reasonable probability that:
>
>> (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
>>
>> (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;
>
> (C) termination is in the best interests of the child; and
>
> (D) there is a satisfactory plan for the care and treatment of the child.

As set forth above, subsection (B) is written in the disjunctive, requiring that the DCS prove only one of the two requirements by clear and convincing evidence. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999). Therefore, standing alone, a finding that a reasonable probability existed that the conditions resulting in the removal of the child were unlikely to be remedied by the parent, can satisfy the requirement listed in subsection (B).

## II. Conditions Remedied

With regard to Father's contentions that the DCS failed to show that the conditions that resulted in the children's removal would not be remedied, we note that, to determine whether this allegation has been proven, the juvenile court must judge a parent's fitness to care for the child at the time of the termination hearing and take into consideration any

8

evidence of changed conditions. In re D.D., 804 N.E.2d at 266. A parent's habitual pattern of conduct must also be evaluated to determine the probability of future neglect or deprivation of the child. Id. The juvenile court can properly consider the services that the State offered to the parent and the parent's response to those services. In re M.W., 943 N.E.2d 848, 854 (Ind. Ct. App. 2011), trans. denied.

As discussed above, Father has missed numerous visits with the children. The record demonstrates that he did not visit in some instances because he had an ongoing case of scabies. However, Father never resumed regular visits with the children. Father also "struggled" with handling both of the children at once and had difficulty providing adequate supervision for them. Tr. p. 50, 55, 60. When Father does visit with the children, the sessions have been fully supervised with constant redirection regarding his inappropriate developmental expectations for both Al. S. and A.S.

Throughout the pendency of the proceedings, Father was found in contempt on four occasions for failing to complete the parenting services that were offered, and he has displayed a very limited ability to care for the children for short periods of time. The CASA also observed that Father "had a short fuse," and it did not take much for him "to snap at the children." Id. at 119.

Father also failed to participate in the programs and services that were recommended by the DCS to improve his stability and parenting skills. In fact, Father commented that he was not open to suggestions regarding his parenting skills. DCS Ex. 6. Additionally, while a DCS case manager testified that Father had been offered "every

service it could," Father believed that the services "were a waste of time." Tr. p. 92, 95. Father also never completed recommended anger management services or parenting classes.

Although Father testified that he might be able to find employment, he was unemployed at the time of the termination hearing. In fact, Father's mother supported him financially.

One of the case managers testified that she believed that there would be a risk of harm if the children were placed with Father. Thus, she and the CASA believed that termination of Father's parental rights is also in the children's best interests. Tr. p. 96, 123.

In short, the evidence supports the juvenile court's determination that there is a reasonable probability that Father would not remedy the conditions that resulted in the children's removal.[3]

### III.  The Children's Best Interests

We next address Father's contention that the DCS failed to show that terminating his parental rights as to the children was in their best interests. In determining what is in a child's best interests, the juvenile court is required to look beyond the factors identified

---

[3] Father also contends that the DCS failed to prove the continuation of the parent-child relationship poses a threat to A.S. and Al. S.'s well-being. However, as we have noted above, the statute is written in the disjunctive and requires the juvenile court to find only one of the requirements of subsection (B) under Indiana Code section 31-35-2-4 by clear and convincing evidence. In re L.S., 717 N.E.2d at 209. Standing alone, the finding that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied satisfies the requirement of subsection (B). We therefore need not address Father's argument that DCS failed to prove the continuation of the parent-child relationship poses a threat to the children's well-being.

by the DCS to the totality of the evidence. In re T.F., 743 N.E.2d 766, 776 (Ind. Ct. App. 2001). In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. Id. In analyzing a child's best interests, we recognize that permanency is a central consideration. The juvenile court need not wait until a child is irreversibly influenced such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. Id.

A child's need for stability and permanency is paramount. McBride v. Monroe Cnty. OFC, 798 N.E.2d 185, 192-93 (Ind. Ct. App. 2003). The testimony of a child's caseworker and advocate regarding the child's need for permanency supports a finding that termination is in the child's best interest. In re T.F., 743 N.E.2d at 776.

In this case, both the CASA and the DCS caseworkers supported the termination of Father's parental rights and the plan of adoption for the children. As discussed above, the DCS and the juvenile court made services available to assist Father. However, Father refused to participate and cooperate, with the result being his inability or unwillingness to better himself as a parent. The evidence also established that the children were adjusted and happy in foster care placement, and their needs were being met.

In sum, the evidence established that Father was afforded an extensive period of time in which to provide a safe, stable, and nurturing environment for the children by making positive changes. However, he failed to do so. As a result, we conclude that the juvenile court did not err in finding that termination of Father's parental rights was in the children's best interests.

11

The judgment of the juvenile court is affirmed.

KIRSCH, J., and BROWN, J., concur.